UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

BINGHAM MECHANICAL, INC.,

               Plaintiff,

   v.

CNA INSURANCE CO., et al.
               Defendants.

Case No. 4:10-cv-00342-REB

**ORDER ON MOTION FOR
SUMMARY JUDGMENT**

Pending before the Court is a Motion for Summary Judgment filed by Defendant

Transportation Insurance Company[1] ("Transportation") in this declaratory judgment

action on Transportation's duty to defend Plaintiff Bingham Mechanical, Inc.

("Bingham") under insurance policies Transportation issued to Bingham. (Dkt. 74).

Having considered the record and oral arguments, the Court enters the following order:

## BACKGROUND

**A.**     **The Underlying *Mountain View Hospital* Litigation**

This case represents the apparent denouement of a veritable bird's nest of

construction dispute claims, involving first-party claims, cross-claims, and third-party

claims implicating the owner of the project, multiple contractors, and multiple insurance

companies. The claims have been prosecuted and defended in multiple lawsuits.

---

[1] Transportation Insurance Company is a d/b/a for another named defendant CNA
Insurance Company ("CNA").

All the claims, including Bingham's claims in this case, originate from the construction of Mountain View Hospital ("Hospital") in Idaho Falls, Idaho, from 2001 through 2003. Pl.'s St. Facts, ¶¶ 1-2. The Hospital hired Sahara, Inc., ("Sahara") as the general contractor and Sahara hired subcontractors to perform work on the project. Relevant here, Sahara hired Encompass Services Corporation ("Encompass") to install mechanical systems and Encompass then hired Bingham to install the "wet side" medical gas piping. Def.'s St. Facts, ¶ 6; . Pl.'s St. Facts, ¶¶ 5-6; 9.

It is not clear from the record in this case when the Hospital first noticed problems with the construction of the facility, but it sued Sahara in 2007 for breach of contract and negligence. *Mountain View Hospital v. Sahara, Inc*., CV07-464-E-BLW (D. Idaho) ("*Mountain View Hospital*" litigation/case). Bingham was not named as a defendant at that time. In September of 2009, an expert report in the *Mountain View Hospital* case identified alleged deficiencies in the mechanical work. Def.'s St. Facts, ¶¶ 4-7. Sahara filed a third-party complaint against its mechanical subcontractors, Encompass and United Team Mechanical, LLC ("UTM"), as the successor in interest to Encompass[2]. Pl.'s St. Facts, ¶¶ 5-6, 9; Mot. Jud. Notice, Ex. C, p. 3 (Dkt. 74-4). On September 29, 2009, UTM filed a Third Party Complaint against Bingham, seeking indemnity and contribution for any damages they might be ordered to pay Mountain View or Sahara. *Mountain View Hospital*, No. 4:07-cv-00464-BLW (Dkt. 100).

---

[2] UTM purchased Encompass's assets near the end of construction on the Mountain View Hospital project. Bailey Aff., ¶ 2 (Dkt. 78-3).

During the Hospital construction project, CNA was the liability insurance provider for Encompass, UTM, and Bingham (Bingham was insured by Transportation as a d/b/a of CNA). Pl.'s St. Facts, ¶ 10. CNA hired legal counsel to represent Encompass, which then defended the case, in part, by seeking contribution and/or indemnity from Bingham. Pl.'s St. Facts, ¶ 10. When Bingham was brought into the *Mountain View Hospital* case, it tendered the defense of the claims to its then-current insurer, Travelers Insurance Company ("Travelers") and to CNA, which had been its insurer at the time the hospital was built. Bailey Aff., ¶ 3 (Dkt. 78-3).

Travelers undertook UTM's defense and, after UTM sued CNA on a duty to defend claim, CNA agreed to pay one-half of UTM's defense costs. *Id.* at ¶ 5.

Cincinnati Insurance Company, Bingham's insurer at the time UTM brought Bingham into the *Mountain View Hospital* case, defended Bingham. Bingham also tendered defense of the case to Transportation on February 18, 2010. Almost ten months later, on December 13, 2010, Transportation issued a disclaimer and declined to assist in the defense. *See* Def.'s St. Facts, ¶¶ 9-10.

The *Mountain View Hospital* litigation ended with a Stipulated Motion to Dismiss All Claims Among the Parties (with one exception not relevant here) after summary judgment proceedings. *Mountain View Hospital*, No. 4:07-cv-00464-BLW (Dkt. 470). On May 22, 2012 the court granted the parties' stipulated motion to dismiss. *Id.* (Dkt. 472).

### B.    The Instant Case

The case at hand originated with a Complaint filed by UTM on July 8, 2010, seeking a declaratory judgment stating that CNA was obligated to provide coverage and defense to UTM in the *Mountain View Hospital* case.  (Dkt. 1).  At the request of the parties, this matter was stayed[3] to await the outcome of the *Mountain View* case.  In the meantime, Bingham was allowed to intervene, filing a Complaint on March 22, 2012.  (Dkt. 58).  The *Mountain View Hospital* case settled in May of 2012.  In November of 2012, CNA and UTM filed a Stipulation to Dismiss all of UTM's claims against CNA.  (Dkt. 60).  On November 14, 2012, the Court dismissed UTM's claims.

All that remains is Bingham's Complaint for Declaratory Judgment, which seeks (1) a judgment declaring that Transportation (or CNA) has a duty to provide coverage and a defense to Bingham for the claims arising in the *Mountain View Hospital* case and (2) a judgment in favor of Bingham for breach of contract.  Transportation seeks summary judgment on its Third, Fourth, and Sixth affirmative defenses[4] because, it argues,

---

[3]  The Court stayed this case for over a year upon the parties' requests, renewed several times, to wait for summary judgment proceedings and settlement talks to run their course in the *Mountain View Hospital* case.  (Dkts. 31, 41, 43, 46).

[4]  Transportation's third affirmative defense states that Bingham's clams are barred because Bingham has failed to establish it is entitled to coverage under the policies; the fourth affirmative defense asserts that the claims are barred by the "terms, conditions, limitations, and/or exclusions in the Transportation policies"; and the seventh affirmative defense relies on the "business risk" exclusions in the Transportation policies, which it alleges excludes coverage for Bingham's work or product.  *See* Answer, pp. 4–5 (Dkt. 63).

Bingham has not sustained damages recoverable under the policies. Def.'s Mot., p. 1 (Dkt. 74). Bingham responds that material disputes of fact exist to preclude summary judgment.

## DISCUSSION

**A.    Preliminary Matters**

    1.    <u>Transportation's Request for Judicial Notice</u>

Transportation requests the Court take judicial notice of pleadings, briefing, and exhibits filed in the underlying *Mountain View Hospital* litigation. (Dkt. 74-3). Bingham has not objected to the request and the Court may take judicial notice of documents in court proceedings. *See, e.g., BP West Coast Products LLC v. Greene*, 318 F. Supp. 2d 987, 994 (E.D. Cal. 2004). *See also* Fed. R. Evid. 201(b). Accordingly, the Court has considered the filings in the *Mountain View Hospital* litigation—those cited by Transportation as well as others in the public record in that case—in ruling on Transportation's motion.

    2.    <u>Transportation's Objections to Bingham's Supporting Affidavits</u>

Transportation also requests that the Court strike portions of three affidavits and one exhibit submitted by Bingham in support of its response brief.

        *(i)    Bailey Affidavit (Dkt. 78-3)*

Eric Bailey's Affidavit describes his representation of UTM in the instant case and CNA's decision to partially indemnify and defend UTM in the underlying litigation. The information the Court has cited to from this Affidavit is based on Bailey's personal

knowledge.  However, the Court has given Bailey's Affidavit only limited consideration because the policies under which CNA/Transportation provided insurance to UTM may contain differing terms than those insuring Bingham and, in any event, exclusions may apply to Bingham but not UTM, in part because UTM did not perform the same work as Bingham so any exclusions based on "your work" may apply only to Bingham, even if the policies are identical.  In short, the Court has not relied on this affidavit to any degree in ruling against Transportation and for Bingham on any matter.

*(ii)     Adamson Affidavit (78-2)*

Transportation objects to an affidavit from Craig Adamson, counsel for Mountain View Hospital in the underlying litigation, as "premised on conclusory statements which are devoid of facts supporting them."  Def.'s Objs., p. 2 (Dkt. 81-1).  While the best evidence of the scope of the underlying litigation and Mountain View's claims may be the record in that case, Adamson's statements about that litigation, if made based on personal knowledge, are relevant.  Testimony of a witness does not need to be supported by other evidence or documents in the record to be considered as evidence itself.  Inconsistencies in the record may be considered by a factfinder in determining whether a witness's testimony is credible, but in this instance it is not a basis for excluding the evidence. However, the Court has considered that Adamson did not explain in detail some of his statements, which lessens the weight of such statements, and has relied on other more specific evidence in the record where appropriate.

*(iii)     Hahn Affidavit (78-4)*

Frederick Hahn, one of the attorneys representing Bingham, submitted an affidavit and several exhibits to that affidavit.  Transportation argues that any information submitted about UTM or Encompass is irrelevant to the issues of coverage under Bingham's policies.  As with Bailey's Affidavit, the Court has accorded only limited consideration to the portions of Hahn's Affidavit discussing CNA's actions with respect to UTM and Encompass, because the policies under which CNA provided insurance to UTM may contain differing terms than those insuring Bingham and exclusions may apply to Bingham but not UTM or Encompass.

*(iv)     Irving Paul Expert Report*

Transportation objects to the Court considering the expert report of Irving Paul for several reasons.  The Court has not considered any of Paul's opinions as to whether Transportation acted in bad faith, because no bad faith claim has been asserted in this case.  Additionally, the Court has not relied on the report in deciding any issue in the instant motion even though it may have some relevance to the issues presented.

**B.     Standards of Law**

1.     <u>Summary Judgment</u>

A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v.. Catrett*, 477 U.S. 317, 323–24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to

trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001); Fed. R. Civ. P. 56. To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See Anderson*, 477 U.S. at 256–57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *See Celotex*, 477 U.S. at 324. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the nonmovant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th

Cir. 1988).  Nor is the Court "required to comb through the record to find some reason to

deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.*, 237

F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840

F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must

direct [the Court's] attention to specific triable facts."  *Southern California Gas Co. v.

City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

     2.   <u>Duties of Insurers to Defend and Indemnify</u>

Although Bingham's Complaint appears to raise both a duty to defend and

coverage issues, Transportation's motion seeks summary judgment on its affirmative

defenses, which focus on its argument that there is no coverage under the policy and,

therefore, no indemnity.

An insurer's duties to defend and indemnify are separate duties and the duty to

defend is broader than the duty to indemnify.  *See Deluna v. State Farm Fire and

Casualty Co.*, 233 P.3d 12, 16 (2008); *Nautilus Ins. Co. v. Pro-Set Erectors, Inc.*, 928

F.Supp.2d 1208, 1223 (D.Idaho 2013).  "The duty to defend is triggered if the

third-party's complaint reveals a *potential for liability* that would be covered by the

insured's policy."  *Idaho Counties Risk Management Program Underwriters v. Northland

Ins.*, 205 P.3d 1220, 1224 (Idaho 2009) (citing *Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d

1256, 1264 (2002) (citations omitted and emphasis added)).  However, the duty to defend

arises only where an insurance policy provides that the insurer has a duty to defend

against the specific type of claim alleged.  *Dave's, Inc. v. Linford*, 291 P.3d 427, 431

(2012); *Constr. Mgmt. Sys., Inc. v. Assurance Co. of America*, 23 P.3d 142, 145 (2001).

Stated another way, "[f]or there to be a duty to defend, the complaint's allegations, in whole or in part, when read broadly, must allege a claim to which the duty to defend applies under the terms of the insurance policy." *Dave's*, 291 P.3d at 431.

Where an insurance policy excludes certain types of claims from coverage, a duty to defend those claims does not arise. *See, e.g., id.* at 432–33 (finding no duty to defend a contractor's action against homeowner brought as a breach of contract claim under a "because of . . . property damage" provision "to which this coverage applies" because the policy excluded property damage to the home); *County of Boise v. Idaho Counties Risk Management Program*, 265 P.3d 514, 517 (2011) (finding no duty to defend where lawsuit arose out of or was connected with land use regulation or planning and zoning activities which were specifically excluded under policy).

"Idaho case law makes it clear that an insurance company must seek a declaratory judgment where the application of an exclusion involves a fairly debatable question of law." *Monarch Greenback, LLC v. Monticello Ins. Co.*, 118 F.Supp.2d 1068, 1078 (D.Idaho 1999) (finding no duty to defend). In such instances:

> While it would not be in the best interest of justice to require an insurance company to seek a declaratory judgment every time a claim is filed; insurance companies should not be able to deny coverage if a question of law exists as to the application of the policy. In deciding whether to cover a claim insurers, at times, appear to lose sight of the purpose for which insurance serves. The purpose of insurance is that of indemnity to the insured in case of loss or the payment of money on the happening of a contingency, to

which end the law makes every reasonable inference, so as to give
the fullest protection possible to the interests of the insured.

*Id.* at 1079.

## C.    Transportation's Motion for Summary Judgment

Transportation seeks summary judgment on the affirmative defenses raised in its

Answer.  Essentially, Transportation asks the Court to rule that there was no coverage

under the policies and, therefore, no duty to defend.  The Court first will consider the

coverage defenses raised by Transportation and then consider those issues under the

standards for the duty to defend.

### 1.    Defining Property Damage Under the Policies

Transportation argues that the damages sought by Mountain View in the

underlying action (and for which UTM and Encompass sought Bingham's contribution)

"consisted of repairing or replacing Bingham's work, not for third party property

damage."  Def.'s Mem., p. 2 (Dkt. 74-2).  Specifically, Transportation points to Mountain

View's plan to replace anchoring, gas piping, and joints that Bingham installed differently

from what the project plans required.[5]  Accordingly, Transportation asserts that "the lack

---

[5] As described by the President of Bingham, Rory Olson, in an affidavit submitted
in the underlying litigation: "[T]he claims against Bingham Mechanical relate solely to
the installation of the medical gas piping . The four medical gas piping issues are: (1) the
installation of type 'L' medical gas and vacuum typing rather than type 'K' piping
called for in the specifications; (2) the use of soldering rather than brazing to join the
vacuum typing as called for in the specifications; (3) alleged improper anchoring of the
medical gas piping; and (4) alleged improper labeling of the medical gas piping."  Def.'s
St. Facts, ¶ 8.  *See also* Olson Aff (Dkt. 74-4); Bingham's Motion for S. Jdgmt. in
*Mountain View* litigation (Dkt. 74-4).

of third-party property damage mandates a finding of no coverage" under the policies; in short, that replacement of the defective piping does not amount to "property damage". Def.'s Mem., p. 4 (Dkt. 74-2). However, replacement of the piping and joints is not the only damage Mountain View might have incurred, as Bingham's policies cover, in relevant part, "property damage", which is defined in the policies as "[p]hysical injury to tangible property, including resulting loss of use of that property." Packard Off., Ex. A, p. 18, ¶ 17 (Dkt. 74-6). It also can include "loss of use" of property "that is not physically injured." *Id.*

Mountain View's original Complaint in the underlying action did not specifically mention the gas piping as a defect, but referred to "several major defects in design and construction" and "anticipate[d] that it may continue to discover additional defects." Mountain View Compl., pp. 3–4 (Dkt. 74-4). Mountain View alleged that the defects resulted in problems, such as medical imaging equipment malfunctioning and operating rooms posing health risks to patients, and it sought to recover actual and consequential damages. *Id.* at p. 5. It is axiomatic that consequential damages include "losses that do not flow directly and immediately from an injurious act . . . but that result indirectly from the act." Black's Law Dictionary 394 (7th Ed. 1999). Thus, the damages[6] could include

---

[6] The Court recognizes that consequential damages from a tort action may be limited and, in fact, that the district court in the *Mountain View Hospital* suit found that the economic loss rule applied to Mountain View's negligence claims. *See Mountain View Hospital*, Order on S. Jdgmt. Mots. (Dkt. 398). However, Mountain View also brought a breach of contract claim. The district judge in the underlying litigation found genuine issues of material fact as to whether damages sought against UTM for breach of

Mountain View Hospital's inability to use rooms and/or equipment due to the defects or during the time when the piping alleged to be defective was being replaced. This type of "loss of use" could amount to property damage as defined in the policies.

The damages also could include the cost of replacing ceiling tiles and drywall, and repainting, as part of accessing the already-installed piping to replace it with that specified in the project plans. Indeed, the record contains bids for the replacement piping work, which include costs for replacing ceiling tile, patching the ceiling, and painting. *See* Hahn Aff., Ex. K (Dkt. 78-15).

Thus, there are issues of fact as to whether Bingham's work caused property damage covered by the policies.

### 2. *Knowledge Within the Policy Period*

Transportation argues in the alternative that because it stopped insuring Bingham more than five years before Bingham receive notice of the issue with its work on the Mountain View hospital project, there was no potential for the Transportation policies to cover the damage and, concomitantly, no duty to defend.

Transportation issued three insurance policies to Bingham effective from April 1, 2001 through April 1, 2004 (the "policies"), with each policy expiring on April 1st and the next policy beginning on the same date a year later. Bingham's work on the project began around March of 2002 and was completed around June 18, 2002. Olson Aff., ¶ 7

_____

contract were consequential or direct. *Id.*

**ORDER ON MOTION FOR SUMMARY JUDGMENT - 13**

(Dkt. 74-4).  Bingham received notice of the alleged defects in its work when it was brought into the *Mountain View Hospital* litigation in 2009.  *Id. ¶ 16.*

Transportation contends that there is no coverage pursuant to the "Known or Continuing Injury or Damage" amendment to the insurance policies because Bingham first learned of the claims five years after its last Transportation policy ended and any property damage claim that might exist would have continued from the time Bingham installed the piping.  The provision at issue is the "Known or Continuing Injury or Damage" Amendment to the Insuring Agreements, which in each policy states:

[1]b.   This insurance applies to "bodily injury" and "property damage" ***only if***

   (1)   The "bodily injury" or "property damage" is caused by an "occurrence"[7] that takes place in the "coverage territory";

   (2)   The "bodily injury" or "property damage" occurs during the policy period; and

   (3)   With respect to "bodily injury" or "property damage" that continues, changes or resumes so as to occur during more than one policy period, both of the following conditions are met:

      (i)   Prior to the policy period, no Authorized Insured knew that the "bodily injury" or "property damage" had occurred, in whole or in part; and

      (ii)   During the policy period , an Authorized Insured first knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

---

[7] Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *See, e.g.*, Pickard Aff., Ex. A, ¶ 13.  (Dkt. 76-4, p. 17).

Packard Aff., Ex. B, 4/1/01 to 4/1/02 policy (Dkt. 74-6, p. 31) (footnote added). *See also id.*, Ex. A, 4/1/02 to 4/1/03 policy (Dkt. 74-6, p. 87); *Id.*, Ex. B, 4/1/03 to 4/1/04 policy (Dkt. 74-7, p. 48). Bingham argues this was not continuous or resumed damage, but rather that the property damage happened during construction/installation. If that is accurate, then another section applies:

> For purposes of this Paragraph 1.b(3) only, if (a) . . . "property damage" that occurs during this policy period *does not continue, change or resume* after the termination of this policy period; and (b) no Authorized Insured first knows of this . . . "property damage" until after the termination of this policy period, then such first knowledge will be deemed to be during this policy period.

Packard Aff., Ex. B (Dkt. 74-6, p. 31) (emphasis added).

At the outset, the Court finds that these provisions are unambiguous. If the property damage occurs during a single policy period and does not continue, change, or resume, then any notice to the insured that arises after termination of the policy period will be deemed effective as notice given during the policy period. However, if the damage does continue, change, or resume, over multiple policy periods (covered by any insurer), then knowledge of the damage must occur during the coverage period. *See North Pac. Ins. Co. v. Mai*, 939 P.2d 570, 572 (Idaho 1997) (an insurance policy provision is ambiguous only if "it is reasonably subject to conflicting interpretations").

Additionally, the provisions do not make the coverage illusory. Bingham argues that the coverage is illusory because "Bingham would not be required to learn of the damage during the policy period if the damage occurred during only one period; but if the

damage occurred during more than one period, then Bingham would be required to learn of the damage during the policy period" and that "would make the existence of coverage (in many cases) entirely dependent upon a third party's diligence in discovering and complaining about damages." Pl.'s Mem., pp.8–9 (Dkt. 78). Transportation describes the purpose of the knowing and continuous provision is to limit the potential for "stacking" of multiple policies for coverage, so as to limit coverage to the policies in effect at the time the damage is discovered. Def.'s Reply, pp. 5–6 (Dkt. 81).

Counsel for Transportation pointed out at the hearing that the knowing and continuous provision does not limit claims for other kinds of damages covered by the policies outside of the bodily injury and property damage claims. Thus, coverage does exist for continuous injuries other than bodily harm and property damage, for parties insured during the time damage is discovered in a continuing damage case, and, if the damage is not continuing and is discovered after the policy period ends, for a person insured at the time the damage occurred. *Martinez v. Idaho Counties Reciprocal Mgmt. Prog*., 999 P.2d 902, 907 (Idaho 2000) (explaining that a policy is illusory if it appears that, if any actual coverage exists, it is extremely minimal and affords no realistic protection to any group or class of injured persons).

Ultimately, however, as to the parties' views on how the provisions operate under the circumstances of this case, there are material disputes of fact that preclude summary judgment. Bingham contends that any damage occurred at the time the alleged nonconforming piping was installed. Transportation argues that any damage occurred

over several policy periods and, even if it did not continue over the course of more than one policy period, it nonetheless occurred after expiration of the final Transportation policy on April 1, 2004. Def.'s Mem., p. 9 (Dkt. 74-2). It is not clear whether property damage occurred during a single policy period or over several. Although the ceiling repair and painting associated with replacing the piping presumably occurred around 2010[8], which is after the last policy expired in 2004, Bingham's work was completed in 2002[9] and property damage associated with loss of use of the facilities or equipment could have occurred during a single policy period. The record is not clear as to when any loss of use (which can be a form of property damage as defined by the policies) occurred. Mountain View obtained a certificate of occupancy in 2003, and could have started using the facility and experienced a loss of use during a Transportation-covered policy period. Additionally, Transportation's February 18, 2010 letter to Bingham lists the "date of loss" as "11-2002". Bingham Compl., Ex. (Dkt. 58-1).

Further, although there is information in the record that bids were taken for the replacement piping that included repairing ceilings and repainting, experts did not include those type of repairs in their damages calculations for the underlying case. *See* Locke Expert Report (Dkt. 74–9) (listing damages from the defective medical gas installation as the cost of installing the specified piping materials and correcting code violations);

---

[8] *See* Hahn Aff., Ex. K (Dkt. 78-15) (bids for replacement work; dated in 2010).

[9] Bingham began its work in March of 2002 and completed its work on or about June 18, 2002, during the second policy's coverage period. Olson Aff., ¶ 7 (Dkt. 74-4).

*Mountain View Hospital* case, Schmitz Aff., Ex. J. (Dkt. 159-12).  Additionally, although

the Adamson Affidavit asserts that the piping issues caused loss of use, none of the

experts included any monetary damages from loss of use in their damages calculations.

These disputes of fact as to whether any property damage occurred, and when it occurred,

preclude summary judgment on this coverage issue.[10]

### 3. *Business Risk Exclusions*

As a further alternative argument, Transportation relies on "business risk

exclusions" in the policies as a basis for denying coverage for Bingham, and reiterates its

argument that the damages "alleged against Bingham were to remediate/replace

Bingham's own improper work."  Def.'s Mem., p. 10 (Dkt. 74-2).  Transportation argues

that the policies' exclusions generally "exclude coverage for damage to the work or

product of the named insured and cover only damage to the property of others, as general

liability policies are not warranties of the insured's work."  Def.'s Mem., p. 10 (Dkt. 74-

2).  Each of the three exclusions will be considered in turn:

Section J(6) of the policies excludes coverage for property damage to "[t]hat

particular part of any property that must be restored, repaired or replaced because 'your

_____

[10]  This issue presents a close call, even in a summary judgment context.  There is evidence in the record that could be construed to conclude that regardless of when loss of use occurred, it had to have been prior to 2009 when Bingham was brought into the lawsuit.  If so, that fact coupled with any property damage caused by tearing out walls/ceilings to replace pipes in 2010 or later would indicate that the damage occurred over more than one policy period, even if one of those policy periods was in 2002 or 2003 when Bingham was covered by Transportation's policies.  However, the array of facts on this issue allows for reasonable minds to differ.

work' was incorrectly performed on it." Def.'s St. Facts, ¶ 3 (Dkt. 74-1); Pickard Aff., Exs. A & B. The policies specify that "this exclusion does not apply to 'property damage' included in the products-completed operations hazard." Pickard Aff., Ex. A, Dkt. 74-6, p. 9 and 64, Dkt. 74-7, p. 24. The policy defines "products-completed operations hazard" as "all . . .'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work,'" and defines a few exceptions, not applicable here. Pickard Aff., Ex. A, Dkt. 74-6, p. 17 and 72, Dkt. 74-7, p. 32. Bingham argues that since the damages alleged by Mountain View occurred away from Bingham's premises, and allegedly arose out of Bingham's product or work, they fall under the "products completed operations hazard," and therefore are not affected by Exclusion J(6). The Court agrees.

Section L provides that coverage is not afforded for property damage to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'." Def.'s St. Facts, ¶ 3 (Dkt. 74-1); Pickard Aff., Exs. A & B. Bingham has not argued that Transportation is responsible for covering the actual piping Bingham installed, just the resulting damage, such as loss of use and any damage to Mountain View's property that occurs during replacement of the piping. Thus, this exclusion does not apply.

Section M excludes coverage for property damage to "'impaired property' or property that has not been physically injured, arising out of: (1) A defect, deficiency , inadequacy or dangerous condition in . . . 'your work'; or (2) A . . . failure by you . . . to

perform a contract or agreement in accordance with its terms." "Impaired property" is

defined to include property that

> cannot be used or is less useful because . . . it incorporates "your product" or "your work" that is . . . defective, deficient, inadequate or dangerous; or . . . *you have failed to fulfill the terms of a contract or agreement*; if such property can be restored by: (a) the repair, replacement, adjustment or removal of "your product" or "your work"; or (b) your fulfilling the terms of the contract or agreement.

Pickard Aff., Exs. A & B (emphasis added). There is an issue of fact as to whether this

exclusion applies because Bingham argued in the underlying litigation that, although the

project called for type "K" and medical grade copper pipe, Encompass instructed

Bingham's president to bid the wet side mechanical costs using type "L" pipe.

Bingham's president averred that he understood both Encompass and Sahara had

accepted the type "L" piping. Olson Aff. (Dkt. 74-4). If that is true then the terms of the

contract may have been amended to allow type "L" piping, in which case this exclusion

would not apply. Thus, disputes of fact remain.

## D.     The Duty to Defend

The Court recognizes that "[a]lthough an insured must prove that the damages for

which it seeks indemnification are covered by the policy, it does not need to prove

coverage to invoke the insurer's duty to defend." *Huntsman Advanced Materials, LLC v.*

*OneBeacon Am. Ins. Co.*, No. 1:08–cv–00229–BLW, 2012 WL 480011 * 3 (D.Idaho

Feb.13, 2012); *see also Stinker Stores v. Nationwide Agribusiness Ins.*, No. CV08-370-

LMB, 2010 WL 1338380, *11-12 (Mar. 31, 2010) (finding no coverage existed under a

policy but also that issues of fact precluded granting summary judgment to defendant on the issue of whether the insurer nonetheless had a duty to defend on that same policy). The same issues of fact that exist regarding whether the policies provide coverage to Bingham preclude summary judgment in Defendant's favor[11] on the duty to defend. Although the duty to defend is a much broader duty than that to indemnify, the timing of any "property damage" that might have occurred is significant to the issue of the duty to defend. Accordingly, to the extent Defendant seeks summary judgment on the duty to claim, it is denied.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 74) is **DENIED**. The parties shall file a combined notice listing all counsels' available dates for trial from May 2014 through October 2014. The noticed shall be filed on or before **April 8, 2014.**

DATED: **March 31, 2014**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[11] Only Transportation moved for summary judgment. Bingham suggests the Court could enter summary judgment in its favor under Rule 56(f); however, that course is not appropriate in this case with the disputed facts.

**ORDER ON MOTION FOR SUMMARY JUDGMENT - 21**